UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LEVIRNE DUKE SANSBURY,           Case No. 06-20144

    Defendant.                    Honorable Patrick J. Duggan

_____/

**OPINION AND ORDER
GRANTING DEFENDANT'S MOTIONS TO SUPPRESS**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on September 5, 2006.

PRESENT:     THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

Defendant Levirne Duke Sansbury has been charged with three counts of possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), one count of being a felon in possession of a handgun in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A), based upon evidence discovered during the search of Defendant's person and apartment. The following motions are before the Court: (1) Defendant's motion to suppress all evidence and any statements made by him as a result of his illegal arrest, apprehension, and detention, filed on June 16, 2006; and (2) Defendant's motion to suppress all evidence seized pursuant to a state-issued search warrant, filed on June 27, 2006. The government filed responses in opposition to these motions. The Court held hearings on these motions on July 11 and August 11, 2006.

**I.  Background**

The government contends that during the months of July and August 2005, officers from the County of Macomb Enforcement Team (COMET) received information from anonymous callers that Defendant was selling crack cocaine in the North-End area of Mt. Clemens, Michigan. COMET officers also received anonymous information that Defendant was using a burgundy motor scooter to transport the narcotics and that Defendant stored narcotics at an apartment in Harrison Township. COMET officers also learned that to avoid detection, Defendant would allegedly hide drugs in his pants.

COMET officers conducted surveillance of the Defendant and determined that he frequented the area of 110 Euclid and 192 N. Walnut, Mt. Clemens. COMET officers determined that Defendant had two vehicles registered in his name to the apartment in Harrison Township, Michigan. Defendant was also observed at the apartment.

On August 18, 2005, COMET officers received an anonymous tip that Defendant would be selling drugs from a house located at 192 N. Walnut, Mt. Clemens. Defendant was reportedly driving a green Buick with large rims, which was registered to the Harrison Township apartment. The officers drove past 192 N. Walnut several times and observed persons under an awning gambling around a table. They contend they saw Defendant standing in the driveway with his vehicle parked nearby. COMET officers watched people approach Defendant and stay for short periods of time.

Although Defendant contends that he was in the rear yard of 192 N. Walnut when the officers approached him, according to the officers, they approached Defendant while he was standing in the driveway. As they approached, they heard someone say, "Oh shit, it's the

2

police!" and several people ran.

According to the COMET officers, they spoke with the Defendant and asked him if he had any illegal narcotics on him. They contend that he became extremely nervous. Detective Ventimiglio conducted a pat-down search of Defendant. During the pat-down, Detective Ventimiglio felt what he believed to be a package of crack cocaine in Defendant's pants. Ventimiglio found over 5 grams of cocaine base packaged in individual quantities for sale.

After Defendant was arrested, he told the officers that he lived at the Harrison Township apartment with his girlfriend and children. The officers obtained a search warrant for the apartment and searched the premises. During the search, they found a variety of narcotics, paraphernalia, currency, a firearm, documents tying Defendant to the address, and a Honda scooter. Many of the items seized were located inside a safe in the basement of the apartment complex, which required both a key and combination to gain access. At the time of his arrest, Defendant possessed a key to this safe. Moreover, while at the Macomb County Jail, Defendant provided the combination to the safe to the officers.

Defendant seeks suppression of any and all evidence seized in this case.

**II.   Discussion**

First, Defendant contends that the search of his person violated the Fourth Amendment because the officers did not have a reasonable suspicion to believe that Defendant had committed, was committing, or was about to commit a crime or that he was presently armed and dangerous. Second, Defendant contends that no probable cause existed for the issuance of a search warrant for the Harrison Township apartment. Defendant argues that the Magistrate Judge John Russi was presented with an affidavit that failed to provide a basis for

the issuance of the search warrant.

In response, the government first argues that Defendant's request to suppress "any and all" evidence is too broad. The Court disagrees. Both Defendant's motions are premised on his contention that his arrest was illegal. In his first motion, Defendant seeks an Order "excluding all evidence and any all [sic] statements made by him as a result of his illegal arrest, apprehension and detention." In his second motion, Defendant seeks an order suppressing "all evidence seized pursuant to a state issued search warrant." Although filed separately, both motions dispute whether Defendant's underlying arrest was constitutional, and therefore, whether the statements and evidence obtained after the arrest are fruit of an unlawful arrest. Consequently, the Court must begin its analysis with the lawfulness of Defendant's arrest.

The Court must determine whether the officers pointed to specific and articulable facts, which when taken together with rational inferences from those facts, reasonably warranted the search of Defendant at 192 N. Walnut. *See Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968). Defendant contends that simply because Defendant was in a neighborhood known for criminal activity, that did not provide the officers a reasonable suspicion to believe that Defendant was engaged in criminal conduct, citing *Brown v. Texas*, 443 U.S. 47, 52, 99 S. Ct. 2637, 2641 (1979).

In *Brown*, an officer stopped and searched the defendant after he spotted the defendant in an alley located in a neighborhood known to be frequented by drug users. *Id.* at 48-49, 99 S. Ct. at 2639. The officer testified that the defendant looked suspicious, but was unable to point to any specific facts supporting a reasonable suspicion. *See id.* at 49, 99 S. Ct. at 2639.

4

The Supreme Court found that the evidence obtained during the search must be suppressed because the search violated the Fourth Amendment. *Id.* at 52, 99 S. Ct. at 2641. The Supreme Court reasoned that: "The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct. In short, the appellant's activity was no different from the activity of other pedestrians in that neighborhood." *Id.*, 99 S. Ct. at 2641.

At the evidentiary hearing held on July 11, 2006, Sergeant Brian Kozlowski testified that he observed the Defendant in the driveway of the house located at 192 N. Walnut, Mt. Clemens, Michigan. (7/11/06 Tr. at 15). He observed two or three persons have a brief contact with Defendant for "20, 30 seconds" (7/11/06 Tr. at 31), but besides being able to see that Defendant was speaking with these individuals, Kozlowski did not observe any other actions between Defendant and these individuals. (7/11/06 Tr. at 31-32). He further testified that at that time, Defendant was not doing anything wrong or illegal. (7/11/06 Tr. at 16).

After the officers approached the house, Kozlowski testified that he observed Detective Ventimiglio order the Defendant to the ground. (7/11/06 Tr. at 21, 22). Kozlowski also testified that he observed that Defendant had been handcuffed. (7/11/06 Tr. at 22). Then, *after* Defendant was already on the ground in handcuffs, Sergeant Kozlowski observed the pat down search taking place. (7/11/06/ Tr. at 22-23). According to Kozlowski, during the pat down, Defendant's pants fell down and the narcotics "fell out" of his pants. (7/11/06 Tr. at 23). After finding the drugs, Sergeant Kozlowski formally told Defendant he was under arrest. (7/11/06 Tr. at 24).

It is clear to this Court that when Officer Ventimiglio ordered Defendant to the ground

5

and handcuffed him, there was no probable cause to arrest him.  At the hearing on August 11, 2006, counsel for the government acknowledged that prior to the search and discovering the cocaine, the officers did not have probable cause to arrest him. (8/11/06 Tr. at 84).  However, counsel for the government argued that although they did not have probable cause to arrest Defendant, they had probable cause to search him.[1]  The Court disagrees.

When an individual is subject to a lawful investigative detention, an officer may conduct a limited frisk or pat down of that person for weapons if the officer has a reasonable suspicion of criminal activity and a reasonable belief that the suspect is armed and dangerous. *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883.  In determining whether an officer's suspicion of danger and subsequent conduct were reasonable, "due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch' but to specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.*, 88 S. Ct. at 1883.

Therefore, although it was not improper for the officers to conduct a *Terry* stop, this would only permit the officers to pat down Defendant for weapons for the security of the officers.  The *Terry* stop did not permit Officer Ventimiglio to order the Defendant to the

---

[1]Counsel for the government argues that although Defendant's arrest was not supported by probable cause, the initial search of the Defendant was supported by probable cause.  Pursuant to a request made by this Court at the hearing on August 11, 2006 to provide legal support for its position, counsel for the government submitted a memorandum.  The case provided by counsel, however, involves a § 1983 civil matter where the district court was criticized for "its distinction between probable cause to search and probable cause to arrest."  *See Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996).  Moreover, the *Greene* court noted that "the same quantum of evidence is required whether one is concerned with probable cause to arrest or probable cause to search." *Id.* (quoting 1 LAFAVE § 3.1(b) at 544).  Counsel for the government did not cite any case from anywhere which supports the government's claim that even though there is no probable cause to arrest the suspect, nevertheless, probable cause may exist to search him.

ground and handcuff him. Clearly at that point, Defendant had been placed under arrest – even before the officers had determined that he was in possession of cocaine. The fact that two or three individuals approached Defendant while he was standing there and talked to him for a few seconds did not, in this Court's opinion, give the officers probable cause to believe that he was engaged in selling drugs or that drugs would be found on Defendant's person. It is clear from the testimony that the officers had information that Defendant had, in the past, sold drugs and that Defendant often possessed and concealed drugs in the crotch of his pants. In this Court's opinion, the officers conducted a search without probable cause on the "suspicion" that he might be carrying drugs in this pants. Such conduct violates Defendant's Fourth Amendment rights and the drugs obtained during the search must be suppressed. Moreover, any statement made by Defendant to the officers shall be suppressed as fruit of an unlawful arrest pursuant to the exclusionary rule. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S. Ct. 407, 415-16 (1963).

In addition, Defendant moves to suppress all evidence seized pursuant to a state-issued search warrant. The search warrant and affidavit set forth, in pertinent part, the anonymous tips the officers had received regarding Defendant's drug sales, Defendant's history of dealing drugs, the vehicles registered in Defendant's name at the Harrison Township apartment, the fact that the officers found drugs on Defendant on August 18, 2005, and the Defendant's own statement that he lived at the Harrison Township apartment–which he made to the police after he was arrested. (*See* Resp. to Mot. Ex. 1, Search Warrant and Aff.).

In this case, the Court has already determined that the drugs obtained during the search and the statements made by Defendant following his arrest must be suppressed. To

7

determine whether the search warrant and affidavit, absent the excluded statements, is sufficient to support a finding of probable cause, the Court must look to the "totality of the circumstances," including a confidential informant's "veracity, reliability, and basis of knowledge." *Illinois v. Gates*, 462 U.S. 213, 230, 103 S. Ct. 2317, 2328 (1983). However, an anonymous informant's tips, alone, cannot supply the basis for a search warrant. *See U.S. v. May*, 399 F.3d 817, 823 (6th Cir. 2005). In this Court's opinion, excluding the statement that drugs were found and excluding the statement made by Defendant which the Court has suppressed, the issuance of the search warrant was not justified based on the remaining facts in the affidavit.

The Court rejects the government's argument that the evidence obtained pursuant to the search warrant should be admitted pursuant to *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984). The Sixth Circuit in *United States v. Rodriguez-Suazo*, 33348 F.3d 637, 649 (6th Cir. 2003), addressing the *Leon* exception, stated, "exclusion should be ordered only if the police officer knew or should be charged with knowledge that this search was unconstitutional under the Fourth Amendment . . . ." In this case, the affiant on the search warrant, Officer Mark Berger acknowledges in the affidavit that he was with Officer Ventimiglio and observed the search by Ventimiglio. The affiant is clearly charged with the knowledge that that search was not justified.

Moreover, the good faith exception established in *Leon* does not apply where a search warrant is issued on the basis of evidence obtained as a result of an illegal search. *See United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996); *see also United States v. O'Neal*, 17 F.3d 239, 243 n.6 (8th Cir. 1994) ("If the method by which evidence supporting a search warrant

8

is seized is clearly illegal, then even under *Leon* . . ., evidence obtained under the resulting warrant should be excluded.")  Thus, the search pursuant to the search warrant which was based on Officer Berger's affidavit, cannot survive the *Leon* exception.  As previously indicated, absent the statements relating to the discovery of the drugs on Defendant's person, the affidavit did not justify the issuance of a search warrant.

Accordingly,

**IT IS ORDERED** that Defendant's motion to suppress all evidence and any statements made by him as a result of his illegal arrest, apprehension, and detention is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's motion to suppress all evidence seized pursuant to a state-issued search warrant is **GRANTED**.

                                      s/PATRICK J. DUGGAN
                                      UNITED STATES DISTRICT JUDGE

Copies to:
Timothy Barkovic, Esq.
John Freeman, AUSA